[S. F. No. 16337.   In Bank.   Dec. 3, 1942.]

Estate of HOWARD CHESTER PLATT, Deceased. BETTY E. PLATT, Petitioner and Appellant, v. HOWARD C. PLATT, JR., Respondent and Appellant.

Oscar Samuels, Tevis Jacobs and Harry R. Fields for Petitioner and Appellant.

Herbert E. Wenig for Respondent and Appellant.

EDMONDS, J.—Betty E. Platt and Howard C. Platt, Jr., the wife and son respectively of Howard C. Platt, Sr., were named executors of his will and also as beneficiaries of a testamentary trust which he created. Upon settling the first and final account of the executors, the probate court ordered distribution of the estate and construed the provisions of the trust in a manner which satisfied neither of them. Each appealed from the decree.

The controversy concerns the date from which the trustee shall pay income to the wife, and also the division of income over a stated amount between her and the son. Mrs. Platt contends that she is entitled to income from the date of death and not from the date of distribution, as the probate court decided. The son resists this construction of the will, and, by his appeal, seeks a reversal of the decree of distribution insofar as it determines that any deficiency in income of $3,000 payable to Mrs. Platt in a given year must be made up to her in a following year before he is entitled to share in such income of the trust as exceeds the testator's minimum requirements.

The testator died on May 23, 1938. By his will, the wife was given the family home, its furnishings and his automobiles; to the son he left all articles of wearing apparel. The remainder of the estate he devised and bequeathed to Wells Fargo Bank & Union Trust Company, in trust, with directions to pay to Mrs. Platt, from the income thereof, the sum of $250 per month until her remarriage. If the income exceeds that amount, the trustee is directed to pay the excess, not exceeding $250 per month, to the son. Any

surplus income after the payment of these amounts is to be divided equally between her and the son. In the event of the remarriage of the wife, the trustee is directed to pay to her, from the income, the sum of $50 per month for the remainder of her life, and to pay the balance of the income to the son. Upon the death of the wife, the trust shall terminate and the property then held by the trustee shall be delivered to the son.

By the petition for final distribution and settlement of the first and final account, the probate court was asked to interpret the .terms of the trust concerning the date from which the trustee should commence payments to Mrs. Platt and to instruct the trustee as to its duties regarding priority of payments between her and the son. At the hearing upon this petition, the court received evidence and rendered a decree which included findings of fact and conclusions of law.

The court found that Mrs. Platt had been entirely maintained and supported by the testator during their married life and had no independent property or income; that the testator was the western manager of a nationally - known corporation dealing in food products; that he had acted as executor of his mother's will; that his attorney drew the will which had been admitted to probate and, at the time of its execution, title to the home occupied by him and his wife was held by them in joint tenancy. By other findings, the court declared that the home and its furnishings were valued at $22,000, and that the reasonable cost of maintaining it was $200 per month. However, there is a further finding that no buyer has been found for the property at a price of $20,000.

When the testator made his will, the court's findings continue, he held life insurance policies in the amount of $10,000, payable to his wife, and upon his death she collected $8,500 upon them. She also received, by order of court, during the administration of the estate, a family allowance of $4,000, which was paid to her at the rate of $400 per month. The order settling the executors' account allowed her a fee of $710 for her services. The income from the stocks and bonds, which will comprise the corpus of the trust, for the past several years has amounted to $5,000 annually.

It was the intention of the testator, said the court in its findings, that the income which he provided for his wife

was to be paid to her from the date of the distribution of the estate to the trustee, and not from the date of his death. A further finding upon this subject is that the testator intended his wife should have the family allowance from his estate for her maintenance and support during the period of administration of his estate. Concerning the allocation of income of the trust, the court found that, if it should be insufficient to pay the full monthly payments to her, the testator intended that the deficiency, up to $3,000 per year, should be made up before any amount should be paid to the son.

In support of her position, the wife contends first, that unless the will provides otherwise, the life tenant of a testamentary trust is entitled to income commencing from the date of the testator's death, and secondly, that as the trust is one for her support and maintenance, the income is payable from that date. In answer to these contentions, the son asserts that in California the right to income of a testamentary trust payable periodically accrues only from the date of the distribution of the trust estate to the trustee. He further argues that the probate court's findings concerning the intention of the testator are reasonable in view of the inferences which may properly be drawn from the evidence concerning his experience with probate matters. The son also relies upon the fact that his father owned life insurance policies in favor of his wife and the provisions of the will in regard to the family home, furnishings and automobiles, as supporting the trial court's finding that the testator did not intend to give Mrs. Platt a monthly income from the trust property for her support and maintenance during the period of the administration of his estate.

The appellate courts of California have not been consistent in deciding whether payment of income from a testamentary trust accrues from the date of the testator's death or from the date of distribution of the estate to the trustee. In a majority of cases it has been held that, unless the testamentary trust was created for the support or maintenance of the beneficiary, the income accrues from the date of distribution. (*Fraser* v. *Carman-Ryles,* 8 Cal.2d 143 [64 P.2d 397]; *Estate of Watson,* 32 Cal.App.2d 594 [90 P.2d 349]; *Estate of Lockhart,* 21 Cal.App.2d 574 [69 P.2d 1001]; and see *Estate of Bourn,* 25 Cal.App.2d 590, 600-601 [78 P.2d 193].) Apparently the controlling factor in the decision of these cases was the inability of the beneficiary to compel the payment of any income prior to the distribution of the trust

property to the trustees. That fact, however, is not determinative of the question for, as has been recently stated, the rule which precludes a beneficiary from suing to recover income during the period of administration relates only to the time at which the trustees may be compelled to make payment, and does not determine the date at which the right to income commences. (*Estate of Marre,* 18 Cal.2d 184, 190 [114 P.2d 586].)

The wife contends that in the California cases holding that the right to income from a testamentary trust does not accrue until date of distribution, counsel failed to call to the attention of the court the rule established by the great weight of authority in the United States. This rule is stated in section 234 of the Restatement of the Law of Trusts as follows: "Except as otherwise provided by the terms of the trust, if property is held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary, (a) where the trust is created by will, the former beneficiary is entitled to income from the date of the death of the testator. . . ." Mrs. Platt argues that this rule has been recognized and quoted with approval in *Estate of Dare,* 196 Cal. 29 [235 P. 725], and that it should be applied to the facts of the present case.

Unquestionably, the rule of the Restatement is based upon sound reasoning. As title to all testamentary dispositions vests at the testator's death (Prob. Code, §§ 28, 300), the title of the trustee to Mr. Platt's property vested as of that date, even though the trust estate was residuary in character. (*Estate of Wellings,* 197 Cal. 189 [240 P. 21]; *Estate of Gracey,* 200 Cal. 482 [253 P. 921]; *Estate of Hite,* 159 Cal. 392 [113 P. 1072, Ann.Cas. 1912C, 1014, 32 L.R.A. N.S. 1167]; *Estate of Campbell,* 149 Cal. 712 [87 P. 573]; *Estate of Kalt,* 16 Cal.2d 807 [108 P.2d 401, 133 A.L.R. 1424].) As a necessary corollary, the title of the life tenant also dates from the death of the testator. The income earned by the trust property during the period of administration inures, of course, to the benefit of the trust, and is payable by the executor to the trustee upon distribution. If it should be held that the right of the life tenant to the income does not commence until the date of the decree of distribution, say the courts following the majority rule, the income earned by the trust estate between the date of death and the date of the decree of distribution would be taken

from the life tenant, who is frequently declared to rank first in the consideration of the testator, and given to the remainderman through an enhanced trust corpus.

But in California there is a statute which is determinative of the question raised by the wife's appeal. Section 160 of the Probate Code provides that "In case of a bequest of the interest or income of a certain sum or fund, the income accrues from the testator's death," although this provision is "to be controlled by a testator's express intention." (Prob. Code, § 163.) If, therefore, the income payable to Mrs. Platt is a "bequest of . . . income of a certain sum or fund" and the testator did not express a contrary intention, her right to income from the trust estate accrued at the date of her husband's death.

A bequest is "A gift by will of personal property; a legacy." (Black's Law Dictionary; *Irwin* v. *Gavit*, [C.C.A. 2d] 295 F. 84, 86.) It is well settled that testamentary gifts of trust income are "bequests" (*Commissioner of Internal Revenue* v. *Dobbins*, [C.C.A.3d] 72 F.2d 984, 985; *Dobbins* v. *Commissioner of Internal Revenue*, [C.C.A.3d] 31 F.2d 935, 936; *Irwin* v. *Gavit, supra; Smith* v. *City of Providence*, 63 R.I. 333 [9 A.2d 10, 13, 14]), and by the use of both "sum" and "fund" in section 160 the Legislature must have intended the latter to mean property other than "cash." The assets of an estate constitute a fund in the hands of the executor or administrator (*Jewett* v. *The State*, 94 Ind. 549), and in the present case the fund from which income is to be paid includes all of the decedent's property other than that specifically bequeathed by him. So as there is no express provision in the will as to the date from which payment of income shall accrue, under section 160 of the Probate Code the rights of both the wife and son to income under the trust accrue from the date of the testator's death.

It is interesting to note that although the statute which is now section 160 of the Probate Code was originally enacted in 1872 as section 1366 of the Civil Code, only twice has it been referred to by the appellate courts. In *Estate of Brown*, 143 Cal. 450 [77 P. 160], the question for decision concerned the right to income under a testamentary trust requiring the trustees to invest $5,000 in some safe investment in their discretion, and "out of the income arising from the investment of said fund" to pay a stated amount to a named beneficiary. The beneficiary, upon an appeal

from the order of the probate court determining that income was payable only from the date of distribution to the trustees, contended that the legacy was for maintenance and also relied upon the statutory provision to support her claim to payment from the date of the death of the testatrix. After holding that, in view of the limited record presented upon the appeal, the court was bound by the trial court's finding of fact that the legacy was not for maintenance, it held the section inapplicable because, under the express terms of the will, there could be no income until the $5,000 was received by the trustees and invested to produce the income from which the beneficiary's monthly payments could be made.

The other case, *Spreckels* v. *Spreckels,* 172 Cal. 775 [158 P. 537], concerned a will in which the testator, after disposing of one-half of his estate, gave the other one-half to certain trustees, among other purposes, "to pay over the net annual income thereof to my wife during the term of her natural life." Commenting upon this provision the court said: "The widow became entitled to receive the annual income of the one-half of the estate either immediately upon his death (Civ. Code, § 1366), or at the expiration of one year thereafter. (Civ. Code, § 1368.)"

Insofar as *Fraser* v. *Carman-Ryles, supra, Estate of Watson, supra, Estate of Lockhart, supra,* and the language of *Estate of Bourn, supra,* as well as any other cases in this State, are inconsistent with the rule of section 160 of the Probate Code as interpreted herein, they are expressly disapproved. The cases of *Clayes* v. *Nutter,* 49 Cal.App. 148 [192 P. 870], and *Estate of Mackay,* 107 Cal. 303 [40 P. 558], present situations similar to that of *Estate of Brown, supra,* and the conclusions reached in them are justified by the facts concerning the expressed intention of the testator. (Prob. Code, § 163.) In each of these three cases, under the provisions of the will the terms of which were in controversy, there could be no income available for distribution until a specified amount of money was distributed to the trustees and subsequently invested by them.

In *Estate of Mackay, supra, Estate of Dare, supra,* and *Estate of Marre, supra,* it was held that as the beneficiary of the trust established by the will whose terms were being construed had been supported by the testator, the trust was one for maintenance and the income accrued from the date of the testator's death. But in view of the conclusions which

have been stated concerning the effect of section 160 of the Probate Code and the fact that the testator whose will is now being construed did not expressly fix a date from which income should be paid by the trustee, it is unnecessary to consider whether the trust is one for support and maintenance.

Although neither the wife nor the son raises the question of what interest, if any, is payable upon the income which accrued between the testator's death and the date of distribution, a determination of this question is necessary for a proper application of the funds upon distribution. Interest, when payable upon a legacy, is a part of or an accretion to the legacy itself. (*Estate of Hubbell*, 216 Cal. 574, 578 [15 P.2d 503]; cf. *Estate of Schmierer*, 168 Cal. 747 [145 P. 99].) Legacies for maintenance or to the testator's widow bear interest from the testator's death; all other legacies are due one year after the testator's death and bear interest from that time. (Prob. Code, § 162; *Estate of Mackay, supra*.) Under this rule, the income which accrued to the wife during the period between the date of death and the date of distribution bears interest from the date such income was received by the executors. But no claim is made by the son that the trust was created for his maintenance, and as the estate was distributed within one year of the testator's death, no interest accrued on the son's share of the income received by the executors during administration.

The appeal of the son requires a construction of the provision of the will reading as follows: "If the income from said trust exceeds the . . . $250.00 . . . per month payable to my wife . . . then my trustee shall pay said surplus income up to the sum of . . . $250.00 . . . per month to my . . . son . . . ; If there is any income in addition to the sums mentioned in the foregoing subdivisions . . . the said surplus income over and above the sum of . . . $500.00 . . . per month shall be divided in equal shares between my . . . wife . . . , until she remarries, and my . . . son. . . ." The probate court construed these provisions as giving the wife the right to have any deficiency in the payments to her below $250 per month in any year made up from income subsequently received before the son should be entitled to any part of it. More specifically, the court found: "Whenever there is any deficiency in the said payments [of $250 per month] to Betty E. Platt, the trustee, regardless of any accounting period, shall consider such defi-

ciency as a charge upon the future income of the trust and until such deficiency is paid no payments shall be made to Howard C. Platt, Jr., or his heirs.''

The plan of the testator undoubtedly contemplated an accounting period, at which time the income of the estate, less the cost of administering the trust, would be computed and distributed. In a provision of the will which authorizes advances to either beneficiary in the event of illness or other emergency, the testator refers to the source of the monthly payments to them as ''net income.'' In accordance with common business practice, the inference may properly be drawn that the testator, unquestionably an experienced business man, contemplated an annual period in which the expenses of administration would be deducted from the gross income received from the principal of the trust and the balance, the net income, paid to the beneficiaries. And as he disposed of all income with no provision to meet any deficiency in the stated monthly payments to the wife, each accounting period must be regarded separately and the net amount earned by the trust property in each year paid to the beneficiaries as provided by the will. Any other interpretation would require the court to write into the will provisions which the testator did not make either expressly or by implication.

A somewhat similar situation was presented in *Estate of Chapin*, 47 Cal.App.2d 605 [118 P.2d 499], where the court was called upon to construe a will providing that the net income of the trust estate should be paid in specified amounts to the wife of the testator and to his children, any remainder to be divided equally among the five beneficiaries. The will also provided that if there was not sufficient net income to fully make such payments, the amount fixed for the wife and one son should be paid to them and the balance to the three other children. In answer to the wife's contention that any arrearages should be paid to her before the three children, other than the son, received any payments, the court held that since the will itself did not make provision for a reserve to pay a minimum amount, the court would not provide one by interpretation.

That decision, it is true, was placed, in part, upon the ground that when the construction given an instrument by a trial court appears to be reasonable and consistent with the intent of the party making it, courts of appellate jurisdiction

will not substitute another interpretation even though it seems equally tenable. And in the present case, the wife urges that as the judgment in this particular is based upon a reasonable construction of the provisions of the will concerning the right to income as between herself and the son, this court may not substitute another interpretation for it. The doctrine is applicable, she insists, even if a contrary construction is equally tenable.

An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13]; *Boyer* v. *United States Fidelity & Guaranty Co.*, 206 Cal. 273, 279 [274 P. 57]; *O'Connor* v. *West Sacramento Co.*, 189 Cal. 7, 17 [207 P. 527]; *Estate of Thomson*, 165 Cal. 290 [131 P. 1045]; *Mitchel* v. *Brown*, 43 Cal.App.2d 217 [110 P.2d 456]; *Wall* v. *Equitable Life Assur. Society*, 33 Cal.App.2d 112 [91 P.2d 145]; *Texas Company* v. *Todd*, 19 Cal.App.2d 174 [64 P.2d 1180]), where there is no conflict in the evidence (*Moffatt* v. *Tight*, 44 Cal.App.2d 643 [112 P.2d 910]), or a determination has been made upon incompetent evidence (*Rilovich* v. *Raymond*, 20 Cal.App.2d 630 [67 P.2d 1062]). Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law.

For the reasons which have been stated, the decree of distribution, insofar as it determines the date from which the trustee shall pay income to Betty E. Platt and requires it to consider any deficiency in the amount paid to her below $250 per month, during her life or until her remarriage, as a charge upon the future income of the trust, is reversed, with directions to the trial court to amend the conclusions of law and to enter a modified decree in accordance with the views herein expressed. Costs upon appeal shall be borne by the respective parties.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

CARTER, J.—I concur in the conclusion reached in the majority opinion. However, I believe the case of *Estate of Brown*, 143 Cal. 450 [77 P. 160], therein referred to should be overruled because it failed to give proper effect or appli-

cation to section 1366 of the Civil Code, now section 160 of the Probate Code. The statutory rule in this state, the same as that stated in the Restatement of the Law of Trusts (Rest. Trusts, § 234) is that unless an express intention to the contrary appears in the instrument, the income from a testamentary trust accrues on the testator's death (Prob. Code, §§ 160, 163). In *Estate of Brown, supra,* the court expressed the view that if there was no income from the corpus of the trust, it indicated that the testator did not intend to have payments commence at death. I believe it is preferable to state that if there is no income from the corpus during administration then, of course, there could be no payment commencing at death any more than there could be payment of an income by the trustee if there were none. But merely because the corpus is not bearing income at death does not indicate the testator's intention that the income shall not be payable to the beneficiaries commencing at death. The corpus, if cash, for illustration, may be earning interest during administration and that income should be payable to the beneficiaries.

It is stated in the majority opinion that: "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence (*Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128 [48 P.2d 13] ; *Boyer* v. *United States Fidelity & Guaranty Co.,* 206 Cal. 273, 279 [274 P. 57] ; *O'Connor* v. *West Sacramento Co.,* 189 Cal. 7, 17 [207 P. 527] ; *Estate of Thomson,* 165 Cal. 290 [131 P. 1045] ; *Mitchel* v. *Brown,* 43 Cal. App.2d 217 [110 P.2d 456] ; *Wall* v. *Equitable Life Assur. Soc. of the United States,* 33 Cal.App.2d 112 [91 P.2d 145] ; *Texas Company* v. *Todd,* 19 Cal.App.2d 174 [64 P.2d 1180]), where there is no conflict in the evidence (*Moffatt* v. *Tight,* 44 Cal.App.2d 643 [112 P.2d 910]), or a determination has been made upon incompetent evidence (*Rilovich* v. *Raymond,* 20 Cal.App.2d 630 [67 P.2d 1062]). Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." If that rule is to be accepted, the cases in this state to the contrary should be overruled or harmonized, if possible. There is a conflict of authority which should be recognized and settled. Contrary to the rule stated, it has been held that in the construction

of written instruments when resort is had to the instruments alone, the interpretation of the trial court will be accepted by the appellate court, if reasonable, or if that interpretation is one of two reasonable views, it will be followed. (See for illustration the following cases: *Adams* v. *Petroleum Midway Co., Ltd.*, 205 Cal. 221 [270 P. 668]; *McNeny* v. *Touchstone*, 7 Cal.2d 429 [60 P.2d 986]; *Kautz* v. *Zurick Gen. A. & L. Ins. Co.*, 212 Cal. 576, 582 [300 P. 34]; *Manhattan Beach* v. *Cortelyou*, 10 Cal.2d 653, 660 [76 P.2d 483]; *Teater* v. *Good Hope Dev. Corp.*, 14 Cal.2d 196, 210 [93 P.2d 112]; *Estate of Northcutt*, 16 Cal.2d 683 [107 P.2d 607].)

While, in my opinion, it is not necessary to invoke the rule in question in the determination of this case, the conflict of authority should be noted if the rule is to be applied.